UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD ANTHONY GALVAN,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT W. FOX, et al.,<br><br>    Defendants. | No. 2:15-cv-01798 KJM DB<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, Chad Anthony Galvan, is a state prisoner proceeding pro se and in forma pauperis with a complaint under 42 U.S.C. § 1983. Galvan asserts a claim under the Eighth Amendment for deliberate indifference to safety. The gravamen of Galvan's claim is that defendants exposed him to faulty electric hair clippers that shocked and burned him.

Before the court are (1) defendants' motion for summary judgment and (2) Galvan's motion to appoint counsel. In their motion, defendants argue that they could not have been deliberately indifferent to Galvan's safety because they did not know of the risk of electrocution that the clippers posed. Galvan asks the court to appoint counsel on the basis that his mental disabilities and lack of legal training have prevented him from properly presenting his case. As discussed below, the undersigned recommends that (1) defendants' motion for summary judgment be granted and (2) Galvan's motion to appoint counsel be denied.

////

# I. BACKGROUND

## A. Factual Background

This section is based on evidence in the summary judgment record. Unless otherwise noted, the parties do not dispute the facts recited herein.

Galvan is currently incarcerated at California Men's Colony—East. He was incarcerated at California Medical Facility ("CMF") when the events underlying his complaint took place. (Compl. at 2, 4 (ECF No. 1).)

On July 15, 2014, Galvan was on the yard of the Psychiatric Administrative Segregation Unit ("PASU") at CMF. (Galvan Dep. 12:19–13:1 (ECF No. 26-8).) Defendant Jones ("Officer Jones") was on the yard that day, working as the "Yard Officer." (Jones Decl. ¶ 2 (ECF No. 26-7).) Officer Jones was responsible for escorting inmates to cages where they could groom with electric clippers. (Id. ¶¶ 4, 6; Galvan Dep. 13:21–23 (ECF No. 26-8).) Then he set up clippers inside a grooming cage, which involved running a cord through the side of the cage and plugging it into an outlet outside of the cage. (. (Jones Decl. ¶ 8 (ECF No. 26-7).) Id. ¶ 8.)

Officer Jones declares that the clippers had "something white on top of [them]." (Id. ¶ 9.) Similarly, Galvan states in his deposition that the clippers "were wrapped with a [white] tape," and that "the ones before . . . that were never wrapped." (Galvan Dep. 12:13–15 (ECF No. 26-8).) Galvan also states that the tape was "[wrapped up] in the middle of the hair clippers." (Id. 16:2–3.)

Officer Jones declares that he "saw nothing wrong or out of place with the clippers." (Jones Decl. ¶ 9 (ECF No. 26-7).) He added that the clippers had "no exposed wires or damaged cords," and "appeared to be in proper working condition." (Id.) Galvan does not contradict these statements in his deposition. (See Galvan Dep. at 12, 15–16 (ECF No. 26-8).)

Officer Jones plugged in the clippers and walked around the yard, asking inmates if they wanted to use the clippers. (Jones Decl. ¶¶ 8, 10 (ECF No. 26-7).) Galvan said that he needed to use them and Jones gave him the clippers. (Galvan Dep 15:14–17 (ECF No. 26-8).) Galvan states that he was the first or second inmate to use the clippers that day. (Id. 14:24–15:4.)

////

| | |
|---|---|
| 1 | Further, Galvan states that he does not know if anyone else used the clippers that day. (Id. 15:5– |
| 2 | 7.) |

Galvan started shaving his face with the clippers, which shocked and burned him. (Compl. at 14, 16–20 (ECF No. 1); Galvan Dep. 17:2–6 (ECF No. 26-8).) Subsequently, Officer Jones activated his alarm to indicate a medical emergency and summon medical staff. (Jones Decl. ¶ 14 (ECF No. 26-7); Galvan Dep. 18:13–20 (ECF No. 26-8).) Officer Jones "collected the clippers, placed them in a plastic bag, and recorded the incident in the yard log book." (Jones Decl. ¶ 15 (ECF No. 26-7).)

Medical staff transported Galvan to an emergency room at CMF, where he received treatment for his injuries, which included a facial burn. (Id. ¶ 15; Galvan Dep. at 18–19 (ECF No. 26-8); Compl. at 14 (ECF No. 1).) Galvan also alleges that he received nerve damage to the right side of his face. (Id. at 5, 16–19.)

Defendant Infante ("Sergeant Infante") was the "PASU Sergeant" when the incident happened on July 15, 2014. (Infante Decl. ¶ 6 (ECF No. 26-6).) The PASU Sergeant must review the daily inventory log (i.e., yard log book) to ensure that the designated correctional officer completed it. (Id. ¶ 4.) However, Infante was on leave from June 3, 2014 until July 19, 2014. (Id. ¶ 2.) When he returned, he learned that the clippers had injured someone and had them disposed of in the "Hot Trash." (Id. ¶ 7.) Sergeant Infante declares that, before the incident, he "was not aware that the hair clippers had been altered or damaged in any way." (Id. ¶ 7.) Galvan disagrees. In his assessment, Sergeant Infante should have seen that the clippers were defective because, as PASU Sergeant, he "overlooks everything that's inside the . . . yard." (Galvan Dep. 35:12–16 (ECF No. 26-8).)

Like Sergeant Infante, defendants Fox ("Warden Fox") and Hurley ("Associate Warden Hurley") declare that they were "not aware of any hair clippers that were altered or damaged before [Galvan's] incident." (Fox Decl. ¶ 4 (ECF No. 26-4); Hurley Decl. ¶ 4 (ECF No. 26-5).)

////

////

////

By comparison, Galvan states that Warden Fox and Associate Warden Hurley had no role in providing him with the faulty clippers other than "overseeing that the policies and procedures of distribution of the hair clippers are followed correctly." (Galvan Dep. 34:22–24 (ECF No. 26-8).)

**B.      Procedural Background**

On August 25, 2015, Galvan filed a complaint. (Compl. (ECF No. 1).) When he filed his complaint, Galvan was incarcerated at California State Prison—Sacramento.

Galvan alleges that while incarcerated at CMF, Officer Jones gave him visibly defective electric clippers that electrocuted and burned him. (Id. at 3.) Galvan asserts an Eighth Amendment claim against the following defendants: (1) Warden Fox; (2) Associate Warden Hurley; (3) Sergeant Infante; and (4) Officer Jones.

In screening the complaint, the court found that Galvan had stated a cognizable claim for deliberate indifference to safety against Officer Jones in his individual capacity. (ECF No. 7 at 3.) Further, the court found that Galvan had stated a cognizable claim for deliberate indifference to safety against Warden Fox, Associate Warden Hurley, and Sergeant Infante ("supervisory defendants") in their "official capacities." (Id.) In so ruling, the court reasoned as follows: "Plaintiff explicitly 'links' the three supervisory defendants to his claim by alleging that 'they are responsible for the procedures that allow[ed] [Officer] Jones to issue plug-in hair clippers on the [PASU].'" (Id. at 3 n.1 (citation omitted).)

To support its determination that Galvan sued the supervisory defendants in their "official capacities," the court cited Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). The Monell Court held that plaintiffs could state § 1983 claims for damages against "municipalities and other local government units." Id. at 690. However, Monell did not change the longstanding rule that plaintiffs cannot assert § 1983 damages claims against a state or "its officials acting in their official capacities." Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989). Therefore, it is clear that the court meant to say that Galvan had stated a cognizable claim against the supervisory defendants in their individual capacities based on a theory of supervisory liability. (See ECF No. 7 at 3 n.1.) This interpretation is consistent with the relief Galvan

4

requests in his complaint. (See Compl. at 3 (ECF No. 1).)

On June 29, 2016, Galvan filed a motion to appoint counsel. (Mot. Appoint. Counsel (ECF No. 16).) Therein, Galvan asked the court to appoint counsel because he "suffers from various mental health disabilities" and has no "legal training . . . [or] access to legal materials." (Id. at 1, 3.) The court denied this motion, finding no "exceptional circumstances" warranting the appointment of counsel. (ECF No. 19 at 2.)

The court issued a modified scheduling order on July 11, 2016. (ECF No. 20.) The modified order provided that the parties could conduct discovery until September 20, 2016 and that any motions to compel discovery had to be filed by that date. (Id. at 5, ¶ 6.) The modified order further provided that the parties had to serve discovery requests "not later than sixty days prior to that date," which was approximately July 30, 2016. (See id.).

Galvan filed a "request for discovery evidence" with the court on September 19, 2016. (ECF No. 23 at 1.) Therein, Galvan broadly requested "all discovery evidence . . . pertaining to the entire incident." (Id.)

On October 12, 2016, the court denied Galvan's request. (ECF No. 25.) The court reasoned that the request was unnecessary because Galvan failed to show that he served discovery requests on defendants and was dissatisfied with their responses. (See id. at 1.)

Defendants moved for summary judgment on December 12, 2016. (Defs.' Mot. Summ. J. (ECF No. 26).) Defendants argue that they did not violate Galvan's Eighth Amendment rights because "they were not aware of any substantial risk of serious harm to [Galvan] and were not deliberately indifferent to his safety." (Id. at 1.) Defendants also argue that Galvan cannot recover damages from them in their official capacities. (Id.) Additionally, even though Galvan did not request injunctive relief in his complaint, defendants argue that there is no basis for injunctive relief because he is no longer incarcerated at CMF. (Defs.' Mem. Supp. Mot. Summ. J. at 5–6 (ECF No. 26-1).)

On January 17, 2017, Galvan opposed defendants' motion for summary judgment (ECF No. 7 at 3.) . (Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") (ECF No. 29).) Galvan raises several contentions, most of which are conclusory and unsupported by evidence or legal

argument.

First, Galvan asserts that defendants should have protected him better because he has psychiatric problems. (Id. at 1, 5.) Second, Galvan contends that defendants should have protected him from being shocked because prison policy required them to dispose of items posing a potential for serious harm to inmates. (Id. at 2.) Third, Galvan argues that Officer Jones was deliberately indifferent to his safety because he gave him clippers that were "wrapped up in tape and cloth" without ensuring that they were safe, such as by plugging them in. (Id. at 3–4.) Fourth, Galvan maintains that the supervisory defendants must have known that the clippers were faulty because they had to review daily activity reports. (Id. at 5.) Fifth, Galvan indiscriminately asserts that he can collect money damages from the supervisory defendants in their official capacities. (Id. at 5–6.) Sixth, Galvan maintains that he has a valid claim for injunctive relief because he was allegedly transferred from CMF in retaliation for filing complaints about correctional officers. (Id. at 6–7.)

Contemporaneously with his opposition, Galvan filed a second motion to appoint counsel. (Second Mot. Appoint. Counsel (ECF No. 28).) As he does in his first motion to appoint counsel, Galvan requests counsel because he lacks "legal training," access to "legal materials," and has "mental health" problems. (Id. at 1, 4.) Galvan also suggests that he lacks adequate discovery to oppose defendants' motion for summary judgment. (See id. at 2.) Additionally, Galvan asserts that defendants rejected what he believed to be a fair settlement offer. (Id.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. Crawford-El v. Britton, 523 U.S. 574, 600 (1998); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–50 (1986); Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471–72 (9th Cir. 1994). In essence, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a

jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 248; Matsushita, 475 U.S. at 586–87; Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995) (per curiam).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. See, e.g., Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. See Celotex, 477 U.S. at 324 (citation omitted) ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment, as set forth in [Rule 56(a)], is satisfied." Id. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. Id. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations unsupported by evidence are insufficient to defeat the motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 248; Devereaux, 263 F.3d at 1076 (citations omitted).

More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a reasonable juror "could return a verdict for [him] on the evidence presented." Anderson, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. See id. at 249, 255; Matsushita, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the

proponent must adduce evidence of a factual predicate from which to draw inferences. Am. Int'l Grp., Inc. v. Am. Int'l Bank, 926 F.2d 829, 837 (9th Cir. 1991) (Kozinski, J., dissenting) (citing Celotex, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' motion for summary judgment included a so-called "Rand notice" (ECF No. 26–2) to Galvan informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Woods v. Carey, 684 F.3d 934, 941 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988).

### III. LEGAL ANALYSIS

#### A. Motion for Summary Judgment

The Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Where the plaintiff challenges his conditions of confinement, he must make two showings. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). "First, the plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "Second, the plaintiff must make a 'subjective' showing that the prison official acted 'with a sufficiently culpable state of mind.'" Id. (quoting Wilson, 501 U.S. at 298).

Regarding the objective prong, extreme deprivations are required to make out a conditions-of-confinement claim; "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citation omitted). "Prison officials have a duty to

ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson, 217 F.3d at 731 (citations omitted). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Id.

Regarding the subjective prong, "an Eighth Amendment violation requires a showing that the subjective state of mind of the prison officials was culpable." Id. at 733 (citing Wilson, 501 U.S. at 298–99). For the subjective state of mind of the official to be culpable, the official must have acted with "deliberate indifference." Id. (citing Wilson, 501 U.S. at 303). "The deliberate indifference standard requires the plaintiff to prove that 'the official knows of and disregards an excessive risk to inmate health or safety . . . .'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Whether an official possessed such knowledge 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . .'" Johnson, 217 F.3d at 734 (quoting Farmer, 511 U.S. at 842).

In this case, defendants do not argue that Galvan's injuries are insufficiently serious to satisfy the objective prong. Therefore, the undersigned considers the second prong, i.e., whether defendants acted with deliberate indifference to Galvan's safety.

1. Officer Jones

In this case, no reasonable jury could return a verdict for Galvan on his Eighth Amendment claim against Officer Jones. Based on the evidentiary record, a juror could not reasonably conclude that Officer Jones was deliberately indifferent to his safety.

Galvan contends that Officer Jones must have known of the risk that the clippers would harm him because they were "wrapped up in tape and cloth." (Pl.'s Opp'n at 4 (ECF No. 29).) But Officer Jones declared that he saw nothing indicating that the clippers posed an electrocution hazard, such as exposed wires or damaged cords. Also, he plugged them in without incident. Granted, Officer Jones did not turn them on before giving them to Galvan. However, Galvan has not shown that Officer Jones customarily turned on the clippers to see if they were an electrical

hazard, or that such a policy existed at CMF. Furthermore, even if a reasonable official could infer the risk of electrocution from the fact that tape and cloth were wrapped around the clippers, Officer Jones "must also draw [that] inference." Farmer, 511 U.S. at 837. Reasonable inferences require factual predicates, and the record contains no facts supporting the inference that Officer Jones actually knew that the clippers were defective.

Galvan also argues that Officer Jones should have prevented the clippers from shocking him because he has psychiatric problems. However, there is no evidence that Officer Jones knew of the electrocution risk that the clippers posed. Furthermore, Galvan has submitted no evidence that inmates in the PASU were vulnerable to shocking themselves with grooming tools, or that other mentally ill inmates had actually shocked themselves with such devices. Further, Galvan argues that Officer Jones was deliberately indifferent to his safety because prison policy required him to dispose of dangerous items. But, again, there is no evidence that Officer Jones knew that the clippers were dangerous, and he put the clippers in a bag and documented the incident when he found out.

In short, no rational trier of fact could determine that Officer Jones was deliberately indifferent to Galvan's safety. Accordingly, summary judgment should be granted for defendants on this claim.

### 2. The Supervisory Defendants

"Vicarious liability may not be imposed on a supervisor for the acts of lower officials in a § 1983 action." Lemire v. Cal. Dep't of Corrs. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citation omitted); see also Iqbal, 556 U.S. at 676. "A prison official in a supervisory position may be held liable under § 1983, however, if he or she was personally involved in the constitutional deprivation or [if] a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." Lemire, 726 F.3d at 1074–75 (citation omitted). For a sufficient causal connection to exist, the plaintiff usually must show that the supervisor had knowledge of the unlawful conduct. See id. at 1085 (citation omitted) ("The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should

11

have known would cause others to inflict a constitutional injury."); Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) ("[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."); Taylor, 880 F.2d at 1045 ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor. . . knew of the violations and failed to act to prevent them.").

Here, no reasonable jury could return a verdict for Galvan on his Eighth Amendment claim against the supervisory defendants. Based on the evidentiary record, a juror could not reasonably conclude that the supervisory defendants acted with deliberate indifference to his safety. All three supervisory defendants declared that they had no knowledge that the clippers were defective, and Galvan has submitted no evidence to the contrary. Galvan infers that the Warden Fox and Associate Warden Hurley had such knowledge because they were responsible for CMF's policy allowing inmates in the PASU to use clippers to groom. However, one cannot reasonably infer that Fox and Hurley knew that the clippers were harmful just because they implemented a policy allowing inmates to groom with clippers, especially when there is no evidence that the clippers had shocked inmates before. Moreover, Galvan has not adequately identified what their relevant supervisory duties are, let alone explained how they failed to comply with them.

Similarly, Galvan argues that Sergeant Infante should have known that the clippers were faulty because he had supervisory responsibilities on the yard, including reading the log book in which Officer Jones documented the incident. (See Galvan Dep. 35:12–16 (ECF No. 26-8); Infante Decl. ¶¶ 4–5 (ECF No. 26-6).) But Infante was on leave when the incident happened. Furthermore, no evidence supports Galvan's assumption that prior incidents with the clippers were documented in the log book, or that Sergeant Infante knew of these incidents. See Willard v. Cal. Dep't of Corrs. & Rehab., No. 1:14–cv–00760–BAM, 2015 WL 4495916, at *7 (E.D. Cal. July 23, 2015) (citing cases) (stating that the "cases in which supervisors have been held liable under a failure to train/supervise theory involve conscious choices made with full knowledge that a problem existed").

12

As with Jones, Galvan argues that the supervisory defendants should have prevented the clippers from shocking him because he has psychiatric problems. Again, however, there is no evidence that the supervisory defendants knew of the electrocution risk that the clippers posed. Likewise, there is no evidence that mentally ill inmates were vulnerable to electrocution with clippers. Nor is there any evidence of prior electrocutions with clippers, or that such incidents were documented. And Infante disposed of the clippers when he learned of the incident with Galvan.

In sum, no reasonable juror could conclude that the supervisory defendants were deliberately indifferent to Galvan's safety. Accordingly, summary judgment should be granted for defendants on this claim.

### 3. Injunctive/Declaratory Relief

Although the Eleventh Amendment bars money damages and other retrospective relief against state officials acting in their official capacities, "it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." Ariz. Students' Assoc. v. Ariz. Bd. of Regents, 824 F.3d 858, 865 (9th Cir. 2016). Considering that the court wrote in its screening order that Galvan stated a claim against the supervisory defendants in their "official capacities," this is probably why defendants argued that Galvan is not entitled to injunctive relief. However, Galvan did not request injunctive relief in his complaint. (Compl. at 3 (ECF No. 1).) Therefore, the undersigned need not consider these arguments. 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) (holding that, in granting summary judgment for the defendants, district court did not have to consider claims that the plaintiff raised for the first time in a memorandum opposing summary judgment). Moreover, there would be no basis for injunctive relief even had Galvan sought it in his complaint. As discussed above, no juror could reasonably conclude that there is an "ongoing violation of federal law" at CMF related to defective clippers. Ariz. Students' Assoc., 824 F.3d at 865.

Galvan also requested declaratory relief in his complaint. (Compl. at 3 (ECF No. 1).) This request must be denied as well. Outside of the fact that defendants did not violate Galvan's federal rights, "[d]eclaratory relief against a state official may not be premised on a wholly past

13

violation of federal law." L.A. Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). And, as noted, there is no "present violation of federal law." Id. (citing Papasan v. Allain, 478 U.S. 265, 278 (1986)).

### B. Second Motion to Appoint Counsel

District courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff. See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335–36 (9th Cir. 1990). When determining whether exceptional circumstances exist, the court must consider the plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel). The burden of demonstrating exceptional circumstances is on the plaintiff. Id. Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel. See Wood, 900 F.2d at 1335.

Here, Galvan has not shown that there are exceptional circumstances warranting the appointment of counsel. The court already determined that his mental health problems and lack of legal training/materials did not constitute exceptional circumstances and stands by its ruling. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court . . . in the identical case."). Furthermore, the preceding discussion shows that Galvan's claims lack merit. While Galvan suggests that he lacks adequate discovery to oppose defendants' motion for summary judgment, the record reflects that he did not fully participate in the discovery process. See supra p. 5. Finally, Galvan's assertion that defendants rejected what he believed to be a fair settlement offer is irrelevant. Cf. Fed. R. Evid. 408(a).

////

////

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to for summary judgment (ECF No. 26) be granted; and
2. Galvan's second motion to appoint counsel (ECF No. 28) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: April 11, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:11
DLB1/prisoner-civil rights/galv1798.msj fr